### ABRAM K. DETWILER V. JOSEPHINE LOUISON ET AL.

1. ONE HAVING CLAIM FOR DAMAGES SOUNDING IN TORT NOT A CREDITOR.
   One having a claim against another for damages for an assault and battery is not a creditor within the meaning of the law upon the subject of conveyances in fraud of creditors, until such claim has been reduced to a judgment.

2. BONA FIDE PURCHASER FROM FRAUDULENT GRANTEE PROTECTED.
   Title acquired by an innocent purchaser for value from a fraudulent grantee will not be annulled by a suit against the grantee, to which the purchaser from the grantee is not a party; and a decree against one who had parted with his title before suit brought, will not bind those to whom the title had been conveyed.

3. RULES APPLIED.
   Where L. L. had a claim against F. L. for assault and battery, and after suit brought and before judgment F. L. conveyed his property to Z., who subsequently conveyed it to J. L., the wife of F. L., who mortgaged it to B. for a valuable consideration, and B. assigned the mortgage to D., a bona fide purchaser; D. is protected as against W., who claims title under a judicial sale of the property upon the petition of L. L. to set aside the conveyance to Z., as being in fraud of creditors and to decree a sale of the lands to satisfy her judgment, after the mortgage had been given, and to which action neither J. L. nor B. were made parties.

APPEAL from the Court of Common Pleas of Lucas county.

PARKER, J.

This case comes here by the way of appeal. For a statement of certain facts which are not controverted or which are certainly beyond controversy, necessary to be stated for an understanding of the issues, I read from the plaintiff's brief: This is an action commenced in the common pleas court by Abram K. Detwiler as plaintiff againt Josephine Louison and other defendants, to foreclose a mortgage on lot 10, King's addition to the city of Toledo, Ohio, given by the defendants, Josephine Louison and Francis Louison, husband and wife, to Frank Brenot, July

13, 1889, to secure the payment of a promissory note of that date for $400, payable two years after date, with interest thereon at the rate of six per cent. per annum, payable annually. Mortgage properly executed and recorded July 13, 1889, in Vol. 127 of Lucas County Records of Mortgages, page 286, etc. Leonard H. Wilkinson claims to be the owner of the mortgaged premises and that said mortgage is invalid and not a lien upon the premises. Prior to March 7, 1888, Francis Louison, one of the defendants in this case, and one Louise Louison were husband and wife. On that date a divorce was granted them and said lot 10, King's addition, decreed to said Francis Louison free of her dower. May 12, 1888, said Louise Louison, the divorced wife of Francis Louison, commenced suit in the common pleas court against him for damages on account of alleged assault and battery. At the September term of said court, 1888, to-wit, November 23, 1888, a judgment was entered in favor of Louise Louison against said Francis Louison, for $1,000. The first day of said September term was September 24, 1888. On February 9, 1889, execution was issued upon this judgment and was levied on said lot 10 in King's addition. Subsequent to the bringing of this suit by Louise Louison against Francis Louison, her husband, for assault and battery and prior to the judgment, to-wit, on May 21, 1888, said Francis Louison sold and conveyed said lot 10, King's addition, to Aloys Zimmerman, which deed was recorded on December 11, 1888, in Vol. 146 of Deeds, on page 620. In July, 1888, Francis Louison married his present wife, Josephine Louison. On February 22, 1889, Aloys Zimmerman and wife conveyed said lot 10, King's addition, to Josephine Louison, the present wife of Francis Louison, by deed recorded February 25, 1889, in Vol. 153 of Deeds, page 581. On July 13, 1889, said Josephine Louison and her husband, Francis Louison, mortgaged said lot 10, King's addition, to Frank Brenot for $400; mortgage recorded July 13, 1889, in Volume 127 of Mortgages, page 286. On September 12, 1896, this mortgage was assigned to Abram K. Detwiler, the plaintiff herein, and this is the mortgage upon which he brings this suit.

Subsequently to the conveyance of this lot by Zimmerman and wife to Josephine Louison, and of the record of that deed, to-wit, on April 22, 1889, Louise Louison commenced suit in the court of common pleas of Lucas county, Ohio, against Francis Louison, Aloys Zimmerman and Mary Zimmerman, his wife, to set aside the deed from Francis Louison to Aloys Zimmerman of date May 21, 1888, and to subject said lot 10, King's addition, to the payment of the judgment in her favor above mentioned—the judgment in the assault and battery case. In this suit a decree was entered setting aside said deed, and said lot was ordered sold free from any claim of said Zimmerman and wife, to pay said judgment for $1,000. On March 22, 1890, an order of sale was issued in said case to the sheriff of Lucas county, Ohio, under and in pursuance of which said lot 10, King's addition, was appraised at $500, and on April 26, 1890, it was sold to John Redding, jr., for $603. May 5, 1890, this sale was confirmed. Neither Josephine Louison, who owned the legal title to said lot at the commencement of said suit to set aside the deed to Louise Louison, or Frank Brenot, to whom this mortgage had been given in the meantime, were ever made parties to this suit. May 7, 1890, the sheriff of Lucas county, Ohio, in pursuance of the sale mentioned in the foregoing suit, executed a deed to said John Redding, jr., and subsequently said Redding conveyed said property to the defendant, Leonard **H.** Wilkinson. These deeds were duly recorded.

The claim of defendant, Leonard H. Wilkinson, to said lot is based upon and solely derived through this deed from Redding, the purchaser at the sheriff's sale.

In the course of these transactions Wilkinson obtained a mortgage upon the premises, which appears in the evidence, but nothing is here claimed on that account.

The defendant, Wilkinson, avers in his answer and cross-petition that the deed from Francis Louison to Aloys Zimmerman was made without consideration and with intent to defraud Louise Louison, a creditor, of the claim upon which she had brought suit, and which she afterwards reduced to judgment, as before stated; and he also avers that the deed subsequently made by Louis Zimmerman to Josephine Louison was without consideration; that the mortgage in suit from Josephine Louison and Francis Louison to Frank Brenot and the assignment thereof to the plaintiff, Detwiler, were likewise without consideration, and that said several instruments and transfers were made and received with intent to carry out the same fraudulent purposes.

At the time Francis Louison conveyed this lot to Zimmerman, Louise Louison was not a creditor because of her said demand afterward reduced to a judgment, in a sense that a conveyance made to defeat her demand would be in fraud of her right as a creditor. Her claim was for damages for alleged assault and battery, and it was not a credit nor was she a creditor within the meaning of the law upon the subject of conveyances in fraud of creditors, until it had been reduced to judgment. Evans v. Lewis, 30 O. S., 11.

But assuming that she might have attacked this conveyance and had it set aside, and that Wilkinson had been subrogated to her right in that respect by virtue of his purchase from Redding—who purchased the lot at sheriff's sale made under an order of sale issued on the decree in the case Louise Louison vs. Francis Louison and Zimmerman and his wife—and assuming that the evidence submitted is sufficient to justify us in finding that the conveyances from Francis Louison to Zimmerman and from Zimmerman to Josephine Louison were made without consideration and with intent to defraud Louise Louison, as averred, we must go farther before the claim of the plaintiff under the mortgage can be affected.

Now the evidence discloses that at the date the mortgage was given Francis Louison was indebted to Frank Brenot in the sum of $300, and he then borrowed from Brenot an additional $100, and the note and mortgage were given as evidence of and to secure this indebtedness. Though we may entertain some suspicion of the entire accuracy of the testimony on this point, yet there is nothing in it all to warrant us in discarding or disbelieving it. It stands uncontradicted. The same is true as to the evidence of the want of knowledge of Brenot of any fraudulent purpose in this transaction, and as to the valuable consideration paid by plaintiff for note and mortgage, and his good faith in the transaction. How then can the title of Wilkinson prevail against the mortgage in the hands of the plaintiff?

Counsel for Wilkinson answer this by saying (if we understood him) that the decree in the case of Louise Louison v. Francis Louison and Zimmerman and wife operates upon the title with such potency and farreaching effect that any one receiving a conveyance thereof by deed or mortgage except under the title acquired at the sale made in that case takes subject to such title. That the decree in that case binds not only

the parties and their privies in title who acquired title after suit began, but that it binds as well those who acquired title before said suit was begun, though not parties to the suit, as well all claiming under them.

That this contention and the real point in issue here may be understood, let us refer again to certain of the events before mentioned, and especially to the order thereof.

The action for damages was begun by Louise Louison against Francis Louison on May 12, 1888, but judgment was not obtained until the Septemper term, 1888, which began on the 24th of that month.

On May 21, 1888, Francis Louison conveyed the property to Zimmerman, so that no judgment lien by virtue of this judgment ever attached to the property.

On February 22, 1889, Zimmerman and wife conveyed the lot to Josephine Louison.

On April 22, 1889, Louise Louison began her suit against Francis Louison, Zimmerman and wife (none of whom then had any title to the property), set up her judgment and alleged that Zimmerman and wife claimed some interest in the property, and prayed that they might be required to answer and set it forth or be foreclosed from afterwards asserting it. These defendants, having no interests to protect, allowed a decree to go against them by default.

Afterwards, viz.: on July 13, 1889, this mortgage was given by Josephine Louison, then in possession of the premises, her husband joining, and, as we find, the mortgagee loaned the full amount represented by the mortgage, and had no knowledge of any fraudulent purpose on the part of the mortgagor. We have no doubt but his title was and that of the plaintiff as his assignee of the mortgage is unassailable by those claiming under this decree.

The sale under the decree was made subsequently, but whether made before or after we deem immaterial. It is urged that because the mortgage was executed after the decree which in effect set aside the deed from Francis Louison to Aloys Zimmerman, that the mortgagee was bound by constructive notice of that decree, so that he could not be a mortgagee in good faith. Assuming that a decree against the parties to that suit was authorized and valid, it was not in the chain of title under which the mortgagee claimed, and was not against one who had title at the time the suit was begun or at any time during its pendency so that it was not constructive notice to anybody of anything.

One dealing with titles to land is not bound to search the records to ascertain whether judgments or decrees have been entered against those who may have at one time owned the property in suits brought against them after they have parted with the title. Such persons are as much strangers to the title as persons who never had a interest in it, and there is no more reason for searching the records for judgments against the former class than for judgments against the latter. In neither case can the judgment become a lien upon or in any way affect the title.

It is suggested that conveyances void because made in fraud of creditors cannot be the basis of a good title, but the authorities are clear to the effect that such conveyances are as effective against the grantor to transfer the title as those innocently made can be, and that an innocent purchaser from a fraudulent grantee takes a perfect title. We cite Schultz v. Brown, 2 Circ. Dec., 353, a case that came readily to hand; but we express our opinion upon this subject without the least doubt, and we think counsel

will have no difficulty in finding an abundance of authority like it upon the subject.

But it is said that the proceeding to set aside such conveyance is in effect a proceeding *in rem*, and that the fraudulent grantee is not a necessary party, and that as a consequence of such fraudulent grantee being bound by the decree, though not a party, those claiming under such fraudulent grantee are likewise bound. This reasoning proceeds upon a false assumption. Sockman v. Sockman., 18 O., 362, is the chief reliance of counsel urging these views. This case and others cited do not support this contention. This is the syllabus to that case.

"Where a debtor has made a fraudulent conveyance of his lands, and the judgment creditor, after levying on the same, applies to a court of chancery to aid him in making a sale to satisfy his judgment, a decree for the sale by a master will not be void, though the fraudulent grantees are not made parties, but may be set up by a purchaser under such decree as a perfect defense in an action of ejectment."

Now the case before the court on review was an action in ejectment, instituted by the fraudulent grantee, and the evidence in the case was sufficient in the opinion of the court to justify the lower court in holding that the conveyance was fraudulent and, therefore, void, and that, therefore, the defense was established; but it will be observed that this was said after judicial inquiry and judicial determination of that very point.

This case is reviewed by the Supreme Court at least twice. I call attention to a reference in Beaumont v. Herrick, 24 O. S., 445, where this is said of it, and this seems to be the understanding of that court of what was decided in the Sockman case:

"A decree, in a suit between her and the purchaser [that is, the purchaser at the judicial sale under the judgment] that the conveyance to her was fraudulent, would effectually cut off all claim on her part to an interest in the purchased property."

That is to say, as it affected her, after it had been determined judicially that the conveyance was fraudulent. (p. 456.)

It is true that a judgment creditor who is in a position to have a conveyance made by his judgment debtor set aside because fraudulent as to him as respects his judgment may cause an execution to issue on his judgment and be levied on the land as the land of his debtor, and may bring it to sale, and the purchaser may go into possession and defend his title thus acquired, in ejectment brought by such fraudulent grantee by, showing the fraudulent character of the conveyance and he may maintain an action to quite title, or forcible detainer to recover possession from such fraudulent grantee; or if necessary to obtain possession of the premises after purchasing at judicial sale made under the judgment, he may bring ejectment against the fraudulent grantee and obtain possession but whether he will recover or not in any of these cases will depend upon whether he establishes and the court determines judicially that the conveyance was as to him fraudulent.

Of course the safer and commoner method is to bring an action to remove the cloud cast upon the title by such fraudulent conveyance, before bringing the land to sale under the judgment. U on certain facts being found and determined judicially in an action of any of the kinds mentioned, the title is annulled by the judgment of the court. But we find no authority for saying that a fraudulent conveyance is *ipso facto* and as to all the world so completely and wholly void *ab initio* that good title cannot under any circumstances be acquired from the fraudulent

grantee, or for saying that a title acquired by an innocent purchaser for value may be annulled in a suit against the grantee, to which the purchaser or grantee is not a party, or for saying that which would be in effect the same, that a decree against one who had parted with the title before suit brought would bind those to whom the title had been conveyed.

The doctrine of subrogation invoked by the defendant Wilkinson, and the claim that the rights of the parties are affected by the circumstance of Francis and Josephine Louison obtaining some part of the proceeds of the sale made under the decree in favor of Louise Louison, by the way of exemption in lieu of a homestead, may be disposed of by the remark that, however those things may affect the rights of Wilkinson and Francis and Josephine Louison as between themselves, they cannot prejudicially affect the interest of the plaintiff, who stands in the shoes and right of an innocent purchaser for value from one having apparently a clear and perfect title to the premises.

Decree will be entered in favor of plaintiff as prayed for.

R. M. McKee, for plaintiff.

A. W. Eckert and L. H. Wilkinson, for defendant.